**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**<br>1718 Connecticut Avenue, N.W.<br>Suite 200<br>Washington, DC 20009,<br><br>      Plaintiff,<br><br>      v.<br><br>**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION**<br>Arlington, VA 22202<br><br>      Defendant. | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a) (2014), for injunctive and other appropriate relief, seeking the release of agency records requested by the plaintiff Electronic Privacy Information Center ("EPIC") on February 20, 2015, from the defendant United States Drug Enforcement Administration ("DEA").

2. This lawsuit challenges the failure of the DEA to disclose documents in response to EPIC's Freedom of Information Act request ("EPIC FOIA Request"). EPIC requested reports concerning several DEA programs that impact the privacy rights of Americans that the agency is required by law to produce. EPIC seeks an injunctive order requiring prompt disclosure of all non-exempt responsive records.

1

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. §§ 552(a)(4)(B), and 552(a)(6)(c)(i) (2012). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2013). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4. Plaintiff EPIC is a public interest research organization incorporated as a 501(c)(3) non-profit corporation based in Washington, D.C. EPIC conducts government oversight and analyzes the impact of government programs on civil liberties and privacy interests. EPIC also publishes books, reports, and a bi-weekly electronic newsletter. EPIC maintains two popular Internet sites, https://www.epic.org and https://www.privacy.org/, where EPIC publishes educational resources about emerging privacy issues, including documents obtained from federal agencies under the FOIA. EPIC routinely disseminates information to the public through its website and other media outlets. Courts in this circuit have recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003).

5. Defendant DEA is an agency within the meaning of 5 U.S.C. § 552(f)(1). Defendant is headquartered in Arlington, Virginia.

**Facts**

**Privacy Impact Assessments**

6. The E-Government Act of 2002 requires agencies to perform Privacy Impact Assessments ("PIAs") when "developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form" or "initiating a new collection of information."

7. PIAs are required to be made public if practicable.

8. The Department of Justice's ("DOJ's") Office of Privacy and Civil Liberties ("OPCL") describes when an agency must issue an Initial Privacy Assessment ("IPA"), the precursor to the PIA.

9. Prior to the development of the IPA, the DOJ required the issuance of a Privacy Threshold Analysis ("PTA").

10. There are therefore three privacy reports of interest to EPIC – the PIA, the IPA, and the PTA. These privacy assessments are a critical part of determining the level of intrusiveness new technologies could have on ordinary citizens. The assessments are required by law and provide transparency to the public. EPIC's FOIA work is designed to reveal where this transparency is lacking and highlight those privacy-evasive programs that still lack proper assessments of their impact on privacy.

11. The IPA identifies privacy concerns and determines whether additional privacy analysis and documentation are needed, such as a PIA.

12. According to OPCL, the IPA should be completed at the beginning of the development of an information system, before commencement of testing or piloting.

13. The OPCL assesses all IPAs to determine if a PIA is needed.

14. According to OPCL guidance, once OPCL determines that a PIA is required, a PIA should be conducted.

15. According to OPCL guidance, a PIA should be conducted with sufficient lead time to permit final Departmental approval and public website posting on or before the beginning of any system operation.

16. It is DOJ's stated policy that PIAs must also be conducted for national security systems and submitted to OPCL for review.

## DEA Programs Requiring Privacy Assessments

17. The DEA currently employs or has employed information systems for which PTAs, IPAs or PIAs should have been conducted.

18. The DEA programs listed below comprise a non-exhaustive list of Agency programs whose privacy implications indicate that a PTA, IPA, or PIA should exist, but for which none is publicly available.

### Hemisphere

19. The Hemisphere program gives law enforcement direct access to an AT&T database of call data records on calls made as far back as 1987.

20. According to published reports, the Hemisphere program is the most far-reaching telephone record collection program, eclipsing even the NSA telephone record collection program.

21. The Hemisphere program implicates privacy concerns that require a PTA, IPA, or PIA.

22. The DEA has not made available a PTA, IPA, or PIA for Hemisphere.

### License Plate Readers

23. On May 21, 2012, DEA agent Douglas W. Coleman indicated in a prepared statement for a Congressional hearing that the DEA had launched a National License Plate Reader Program ("LPR") in 2008.

24. A License Plate Reader program enables the government to collect information on the use of private vehicles unrelated to any public safety or vehicle licensing purpose.

25. According to Mr. Coleman's statement, the DEA's LPR program collects data about vehicles that is transferred to any other law enforcement agency in the country.

26.	On January 28, 2015, Senator Charles Grassley and Senator Patrick Leahy sent a letter to Attorney General Eric Holder describing several privacy concerns related to the government's use of LPRs.

27.	The DEA has not made available a PTA, IPA, or PIA for the DEA LPR program.

### DEA Internet Connectivity Endeavor

28.	Mr. Coleman also identified a program entitled DEA Internet Connectivity Endeavor ("DICE") that "…enables any participating federal, state, local and tribal law enforcement agency to de-conflict investigative information, such as phone numbers, email addresses, bank accounts, plane tail numbers and license plates, to identify investigative overlaps."

29.	DICE provides access to information collected through the LPR program.

30.	Reuters has reported that DICE contains approximately one billion records, including phone log data.

31.	The DEA has not made available a PTA, IPA, or PIA for DICE.

### Special Operations Division

32.	Mr. Coleman also stated that the DEA created the Special Operations Division ("SOD") to enable the transfer of personal information across state, local, and tribal law enforcement agencies.

33.	The DEA has not made available a PTA, IPA, or PIA for the SOD program.

### Unnamed Database

34.	In a January 15, 2015 declaration filed with the U.S. District Court for the District of Columbia, DEA Agent Robert Patterson referred to a law enforcement database no longer in use, whose name had been redacted.

35. Agent Patterson stated that the database consisted of telecommunications metadata obtained from United States telecommunications service providers pursuant to administrative subpoenas.

36. Agent Patterson also stated in his declaration that the database could be used to query telephone numbers by federal law enforcement officials who have a reasonable articulable suspicion that the phone number being queried was related to a current criminal investigation.

37. The DEA has not made available a PTA, IPA, or PIA for this DEA unnamed program.

### EPIC's FOIA Request

38. On February 20, 2015, EPIC transmitted, via fax, a FOIA request to the DEA ("EPIC's FOIA Request").

39. EPIC requested the following agency records: "1. All Privacy Impact Assessments the DEA has conducted that are not publicly available at http://www.dea.gov/FOIA/PIA.shtml. 2. All Privacy Threshold Analysis documents and Initial Privacy Assessments the DEA has conducted since 2007 to present."

40. EPIC sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(4)(A)(ii).

41. EPIC also sought waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii), arguing that disclosing the requested information would contribute significantly to public understanding of the operations or activities of the government.

42. On March 2, 2015, DEA sent EPIC a letter acknowledging that EPIC's FOIA Request was received by the agency on February 20, 2015.

43. EPIC has received no determination from DEA pertaining to the substance of EPIC's FOIA Request.

## EPIC's Constructive Exhaustion of Administrative Remedies

44. It has been 70 business days since EPIC's FOIA Request was received, via fax, at the DEA.

45. The DEA has failed to make a determination regarding EPIC's FOIA Request within the time period prescribed by 5 U.S.C. § 552(a)(6)(A)(ii) and (a)(6)(E)(iii) (2013).

46. The DEA's failure to make a determination within the statutory limit violates the FOIA.

47. EPIC has constructively exhausted the administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i) (2013).

## Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

48. Plaintiff repeats and realleges paragraphs 1–47.

49. Defendant DEA has failed to make a determination regarding EPIC's FOIA Request within twenty business days and has violated the deadline under 5 U.S.C. § 552 (a)(6)(A)(ii) and (a)(6)(E)(iii).

50. Plaintiff has constructively exhausted the applicable administrative remedies with respect to EPIC's FOIA Request.

## Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

51. Plaintiff repeats and realleges paragraphs 1–50.

52. Defendant has wrongfully withheld agency records requested by plaintiff.

53. Plaintiff has constructively exhausted applicable administrative remedies with respect to the defendant's withholding of the requested records.

54. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## **Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A. Order the defendant to conduct a reasonable search for all responsive records;

B. Order the defendant to promptly disclose to all responsive, non-exempt records to plaintiff;

C. Order the defendant to produce a *Vaughn* Index identifying any documents or portion of documents withheld, stating the statutory exemption claimed, and explaining how disclosure would damage the interests protected by the claimed exemption;

D. Order the defendant to grant plaintiff's request for a fee waiver;

E. Award plaintiff costs and reasonable attorneys' fees incurred in this action; and

F. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President

By: */s/ Julia Horwitz*
Julia Horwitz, D.C. Bar # 1018561
Ginger McCall, D.C. Bar # 1001104
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
 (202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: May 1, 2015