IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:15-cv-667 (CRC) |
| v. | ) ) ) | |
| UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMBINED
OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table Of Contents ........................................................................................................................... i

Table Of Authorities ...................................................................................................................... 1

Preliminary Statement .................................................................................................................... 2

Background .................................................................................................................................... 3

Argument ....................................................................................................................................... 5

    I. Standard Of Review .............................................................................................................. 6

    Ii. EPIC Is Entitled To Partial Summary Judgment ................................................................. 7

        A. DEA Failed To Conduct A Reasonable Search For Privacy Impact Assessments ........... 7

        B. DEA Failed To Conduct A Reasonable Search For Determination Letters .................... 12

Conclusion ................................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998) .............................................................................. 13
*Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014) 6, 8
*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ................................ 7
*Coleman v. DEA*, No. 14-0315, 2015 WL 5730707 (D.D.C. Sept. 29, 2015) .................................. 8
*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009) ............................ 7
*DOJ v. Tax Analysts*, 492 U.S. 136 (1989) ...................................................................................... 7
*EPIC v. DHS*, 384 F. Supp. 2d 100 (D.D.C. 2005) ......................................................................... 7
*EPIC v. DHS*, 999 F. Supp. 2d 24 (D.D.C. 2013) ....................................................................... 6, 7
*EPIC v. DOJ*, 511 F. Supp. 2d 56 (D.D.C. 2007) ............................................................................ 6
*Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1 (D.D.C. 2014) *aff'd and remanded*, 783 F.3d 1340
    (D.C. Cir. 2015) .......................................................................................................................... 8
*Kleinert v. Bureau of Land Mgmt.*, No. 14-1506, 2015 WL 5675792 (D.D.C. Sept. 25, 2015). 6, 7
*Marino v. DEA*, 15 F. Supp. 3d 141 (D.D.C. 2014) ...................................................................... 13
*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011) .......................................................................... 6
*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ............................................................................. 7
*Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995) . 10
*Neuman v. United States*, 70 F. Supp. 3d 416 (D.D.C. 2014) ........................................................ 8
*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990). ........................................... 8, 13, 14
*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ....................................... 12
*Weisberg v. DOJ*, 705 F.2d 1344 (D.C. Cir. 1983) ....................................................................... 13

**Statutes**

5 U.S.C. § 552(a)(4)(B) ................................................................................................................ 7, 8
Section 208, 116 Stat. at 2921-22 ............................................................................................... 5, 12

**Other Authorities**

Office of Privacy and Civil Liberties, DOJ, Privacy Impact Assessments: Official Guidance
    (Revised July 2015) ............................................................................................................... 5, 11
OMB Memorandum M-03-22*, OMB Guidance for Implementing the Privacy Provisions of the
    E-Government Act of 2002* (Sept. 26, 2003) ........................................................................ 4, 11

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................................... 7

## PRELIMINARY STATEMENT

This case arises out of a Freedom of Information Act ("FOIA") request filed by EPIC for privacy assessments prepared by the Drug Enforcement Administration ("DEA"). The DEA, like all federal agencies, is required by law to complete Privacy Impact Assessments ("PIAs") of programs that involve the collection of personal information in order to "ensure sufficient protections for the privacy of personal information." E-Government Act of 2002, Pub. L. 107-347, § 208, 116 Stat. 2899, 2921 (2002) ("Section 208"). Agencies are required to make PIAs publicly available whenever practicable. *Id.* at 2922. The Department of Justice's ("DOJ") Office of Privacy and Civil Liberties ("OPCL") is charged with determining whether the DEA, and other DOJ subcomponents, must complete a PIA for any new program. Office of Privacy and Civil Liberties United States Department of Justice, *Privacy Impact Assessments: Official Guidance*, 4 (Revised July 2015), Ex. 2. As part of this evaluation process, the subcomponent must submit an Initial Privacy Assessment ("IPA") (previously known as a "Privacy Threshold Analysis") to OPCL.

EPIC filed this request and subsequent suit because it has reason to believe that the DEA is either (1) not making its PIAs public as required by law, or (2) not completing PIAs as required by law. In response to EPIC's suit, the DEA produced one PIA for a program that is no longer active and thirteen "determination letters" from OPCL. The DEA now claims that it cannot find PIAs, even where the OPCL determination letters establish that they were ordered to complete them years ago. Given the evidence in the record, it is clear that the DEA has not satisfied its statutory obligation to conduct a reasonable search for records responsive to EPIC's FOIA request. The Court should accordingly grant EPIC's Cross Motion for Summary Judgment and deny the DEA's Motion for Summary Judgment.

**BACKGROUND**

I.    Factual Background

On February 20, 2015, EPIC sent, via fax and email, a FOIA request to the DEA. Compl. ¶ 38. In the FOIA request, EPIC sought:

1. All Privacy Impact Assessments the DEA has conducted that are not publicly available at http://www.dea.gov/FOIA/PIA.shtml.

2. All Privacy Threshold Analysis documents and Initial Privacy Assessments the DEA has conducted since 2007 to present.

*Id*. at ¶ 39. EPIC also sought a waiver of processing fees. *Id*. at ¶¶ 40–41. In a letter dated March 2, 2015, the agency acknowledged receipt of EPIC's FOIA Request, but made no substantive determination. *Id*. at ¶¶ 42–43.

EPIC filed suit on May 1, 2015. In a letter dated July 23, 2015, the DEA informed EPIC that the agency had "conducted a litigation review of potentially responsive records." Def.'s Ex. C (ECF No.17-6). The agency included with the letter a PIA for Avue Digital Services. *Id.* The agency also informed EPIC that "certain responsive records" had been referred to the Office of Information Policy ("OIP"). *Id.* EPIC received a letter from Vanessa R. Brinkmann, Senior Counsel at OIP, dated August 27, 2015. Def.'s Ex. D (ECF No. 17-7). The letter from Ms. Brinkmann explained that thirteen determination letters responsive to EPIC's request were referred to OIP for processing. *Id*. The thirteen documents were released to EPIC with minimal redactions.

After reviewing the records produced, EPIC requested that the DEA perform a supplemental search for privacy assessments related to six programs where the OPCL determination letters indicate that a DEA PIA was required. Pl's Ex. 3 at 12–13, 17–18, 21–22. The DEA conducted a supplemental search but did not locate the PIAs.

3

II.     E-Government Act Privacy Impact Assessment Requirements

Section 208 of the E-Government Act of 2002 requires government agencies to perform a PIA prior to:

> (i) developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form; or
> (ii) initiating a new collection of information that—
> 　　(I) will be collected, maintained, or disseminated using information technology; and
> 　　(II) includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government.

Section 208, 116 Stat. at 2921-22. Section 208 also requires the PIA to be made public if practicable and for agencies to provide a copy of the PIA to the Director of the Office of Management and Budget ("OMB"). *Id.* at 2922.

The Director of the OMB issued implementation guidance regarding the E-Government Act, which states, "Agencies are required to conduct privacy impact assessments for electronic information systems and collections and, in general, make them publicly available." OMB Memorandum M-03-22*, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002* (Sept. 26, 2003), Ex. 1 ("OMB Guidance Memo")*.* The implementation guidelines make clear that PIAs are required prior to the implementation of the systems or projects "that collect, maintain or disseminate information in identifiable form from or about members of the public." *Id.*

In addition to the OMB Guidance, the OPCL provides official guidance on Privacy Impact Assessments to "assist DOJ personnel on how to effectively conduct a PIA and how to properly document this assessment." Office of Privacy and Civil Liberties, DOJ, Privacy Impact Assessments: Official Guidance 2 (Revised July 2015), Ex. 2 ("DOJ Guidance"). The OPCL

4

assesses the need for a PIA through an IPA (formerly known as a Privacy Threshold Analysis). The DOJ Guidance states that, "[i]f OPCL determines that a component must complete a PIA, the component drafts a PIA using the current PIA template." Ex. 2 at 4. Furthermore, "it is the Department's policy that PIAs must also be conducted for national security systems and submitted to OPCL for review and approval by the CPCLO." *Id*.

## ARGUMENT

The FOIA was enacted "to facilitate public access to Government documents" and "was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) [hereinafter *CREW*] (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). The underlying purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *EPIC v. DHS*, 999 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "In enacting FOIA, Congress struck the balance it thought right—generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 562 U.S. 562, 571 fn. 5 (2011). As a result, the FOIA "mandates a strong presumption in favor of disclosure." *EPIC v. DOJ*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

Under the FOIA, an agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Kleinert v. Bureau of Land Mgmt.*, No. 14-1506, 2015 WL 5675792, at *3 (D.D.C. Sept. 25, 2015) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 514 (D.C. Cir. 2011)). "In adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying

5

upon agency affidavits," provided they are "relatively detailed," "nonconclusory," and "submitted in good faith." *Morley v. CIA,* 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal quotation marks and brackets omitted). But even where the agency submits an affidavit in good faith, "the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Id.* (internal quotation marks omitted).

The burden falls on the agency to prove that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B). *See also Kleinert*, 2015 WL 5675792, at *2 (citing *DOJ v. Tax Analysts,* 492 U.S. 136, 142 n. 3 (1989)); *EPIC v. DHS*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005). Where the government has not carried this burden, summary judgment in favor of the Plaintiff is appropriate. *See, e.g.*, *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

**I. STANDARD OF REVIEW**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that would change the outcome of the litigation." *EPIC v. DHS*, 999 F. Supp. 2d 24, 28 (D.D.C. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). FOIA cases are typically decided on motions for summary judgment. *Id.*; *see Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A district court reviewing a motion for summary judgment in a FOIA case "conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *Neuman v. United States*, 70 F. Supp. 3d 416, 421 (D.D.C. 2014). *See also* 5 U.S.C. § 552(a)(4)(B); *CREW*, 746 F.3d at 1088 (citing *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)).

The court must "analyze all underlying facts and inferences in the light most favorable to the FOIA requester," and therefore "summary judgment for an agency is only appropriate after the agency proves that it has 'fully discharged its [FOIA] obligations.'" *Neuman*, 70 F. Supp. 3d at 421 (citing *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)).

## II. EPIC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

"To meet its FOIA obligations, an agency must show that it 'conducted a search reasonably calculated to uncover all relevant documents.'" *Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1, 5 (D.D.C. 2014) *aff'd and remanded*, 783 F.3d 1340 (D.C. Cir. 2015) (quoting *Weisburg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The burden is on the agency to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[T]he agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Id.* The adequacy of the agency's search is "'measured by the reasonableness of the effort in light of the specific request.'" *Coleman v. DEA*, No. 14-00315, 2015 WL 5730707, at *4 (D.D.C. Sept. 29, 2015) (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)). Furthermore, "an agency cannot ignore 'clear leads . . . [that] may indicate . . . other offices that should have been searched." *Id.* (quoting *Rollins v. U.S. Dept. of State*, 70 F. Supp.3d 546, 550 (D.D.C. 2014)).

### A. The DEA Failed to Conduct A Reasonable Search for PIAs

The DEA failed to conduct a reasonable search calculated to uncover all relevant PIAs requested by EPIC. The DEA's search for PIAs was insufficient for three reasons. First, the agency used an incomplete search methodology to find documents that should have been readily available. Second, the agency unnecessarily limited the scope of its search without any

7

justification. And third, the agency failed to alter its search methodology after EPIC provided evidence of PIAs that the agency was required by law to produce, which were not discovered in the original search.

The DEA declaration talks at length about the process of searching agency databases that might contain files, but it fails to explain why such a keyword search was even necessary. According to the DEA's Chief FOIA officer Katherine Myrick, the Chief Information Officer Support Unit ("CIOSU") of the Office of Information Systems is the point of contact with OPCL and is responsible for obtaining the approval of DEA's Senior Component Official for Privacy for all PIAs. Declaration of Katherin L. Myrick ¶ 10 (ECF 17-3) ("Myrick Decl."). Given the CIOSU's role in the PIA process, and the fact that DEA claims it only has eleven final PIAs, it is not clear why a keyword search is necessary to locate relevant documents. In fact, the DEA's declaration fails to account for the most obvious source of information about the number of PIAs completed: the CIOSU and OPCL offices themselves. The DEA does not explain why these offices would not be able to quickly identify all of the PIAs currently completed or in process, and therefore provide a set of responsive records to review. The declaration does not include any statement from the CIOSU based on the number of PIA approvals sent to OPCL or the number of PIAs handled by that office, even though that information would obviously be available to them. The DEA simply failed to seek out the PIAs in the most straightforward and obvious way possible: asking the responsible officials in possession of the relevant records how many there are.

After the DEA conducted a keyword search of the database, the DEA compounded the problem by inexplicably limiting the search results using the word "final." Myrick Decl. ¶ 19. The agency's only justification for this limitation was its contention that "the word 'final' would

8

likely be included in the message transmitting the final DEA Privacy Impact Assessment." Myrick Decl. ¶ 19. But EPIC did not seek only the PIAs with the word "final" in a message containing a DEA PIA. EPIC sought all DEA PIAs that had not yet been released to the public, regardless of whether they were transmitted in a message with the word "final" or stored in a database elsewhere. "To assess the adequacy of [an agency's] search, we must first ascertain the scope of the request itself." *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 889 (D.C. Cir. 1995). "Although a requester must 'reasonably describe[]' the records sought, 5 U.S.C. § 552(a)(3), an agency also has a duty to construe a FOIA request liberally." *Id.* (citations omitted). EPIC was very specific about the documents it sought—non-public DEA PIAs. The use of the search term "final" to narrow the initial results misconstrued EPIC's request and unnecessarily limited the scope of the search for responsive documents.

In addition, the databases searched by the DEA included relevant documents, not just messages that might have the word "final" in them. The DEA CIOSU searched a "Share Drive," a SharePoint, and various electronic mail databases. Myrick Decl. ¶ 19b-d. The Share Drive, which "is a set of internal network drives that the CIOSU controls," is used to store files. Myrick Decl. ¶ 19b. Similarly, Sharepoint, which is "an internal site belonging to the CIOSU," is used to store various records. Myrick Decl. ¶ 19c. Neither the Share Drive nor the SharePoint databases necessarily contain relevant documents with the word "final" associated with it. The DEA never explained why the initial results needed to be narrowed. The DEA also gave no explanation for why the search results needed to be narrowed with the word "final."

Additionally, the DEA fails to explain why the documents in the Share Drive, SharePoint, or in the electronic mail accounts would contain the word "final." Myrick Decl. ¶ 19. There is no evidence that including "final" in messages containing the PIA is department practice or that

9

relevant documents (i.e. the files on the Share Drive and SharePoint) would contain the word "final." The word "final" is not typically included in the names or content of the DEA PIAs currently available to the public.

Finally, the DEA ignored clear indications that its search was insufficient. In lieu of the IPAs, the DEA agreed to produce "determination letters" prepared by the OPCL. The DEA produced thirteen OPCL determination letters of which six of those determination letters stated one of the following:

- "Pursuant to the privacy provisions of the E-Government Act and OMB's implementing guidance (M-3-22), the DEA must complete a privacy impact assessment (PIA) for this system." Pl.'s Ex. 3 at 12;
- "Pursuant to the requirements of the E-Government Act and OMB's implementing guidance (M-03-22), the DEA must complete a Privacy Impact Assessment (PIA) for this system." Pl.'s Ex. 3 at 13, 21; or
- "Pursuant to the requirements of the E-Government Act and OMB's implementing guidance (M-03-22), a privacy impact assessment (PIA) is required for this system. Pl.'s Ex. 3 at 17–18, 22.

Out of these six determination letters, only two indicate that an existing PIA will cover the requirement for the listed DEA system. Pl.'s Ex. 3 at 17–18. Three of the determination letters give specific instructions to submit a draft PIA to Robin Moss. *Id*. at 12–13, 21. Another letter states that OPCL is in the process of reviewing a draft PIA it received. These determination letters are all dated between 2010–2011. *Id.* at 12–13, 17–18, 21–22. PIAs are required by law to be completed before the implementation of the technology or system the document assesses.

EPIC requested that the DEA perform a supplemental search for the PIAs required by the determination letters. Myrick Decl. ¶ 32. The DEA subsequently agreed to perform the supplemental search. *Id.* at ¶ 33. But the agency never performed any searches "reasonably constructed" to find the PIAs required by the determination letters. *Id.* According to the declaration, the agency merely repeated the same inadequate search it did before to search for the

10

PIAs associated with the programs in the determination letters. *Id.*

After EPIC provided clear evidence that additional PIAs must exist, the agency should have expanded or altered its search methodology, or simply asked knowledgeable officials about the specific documents that EPIC identified. The DEA never contends that the places it searched are the only places where PIAs might be found. Furthermore, the DEA should have known of additional locations to search for the PIAs, mandated by law. "It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999). Section 208 requires agencies to provide a copy of each PIA to the Director of OMB. Section 208, 116 Stat. 2922. This requirement is reiterated in OMB's guidance on the Privacy Provisions of the E-Government Act of 2002. *See* Ex. 1. Furthermore, according to the DOJ's Guidelines the OPCL must give final approval and the Chief Privacy and Civil Liberties Officer must sign all PIAs. Ex. 2 at 6. The DOJ's Guidelines also state that the Senior Component Official for Privacy ("SCOP") "for each component is required to review and prepare a draft PIA for OPCL review and CPCLO signature." *Id.* at 3. At minimal, the DEA should have consulted with the relevant administrators at OPCL and OMB and the DEA's SCOP about potential locations of PIAs sought by EPIC. But according to the declaration, the DEA did not reach out to OPCL, OMB, or the DEA SCOP for help in identifying the PIAs requested by EPIC.

The DEA's search for PIAs was inadequate because it was too narrow and the agency failed to revise its search methodology. An agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby* 920 F.2d at 68. An agency "must revise its assessment of what is 'reasonable' in a particular case to

account for leads that emerge during its inquiry." *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998). Similarly, the DEA cannot limit its search to only those documents that happen to have the word "final" attached to it. And the DEA cannot ignore the evidence of the determination letters that indicate that additional PIAs exist. Finally, any reasonable search conducted by the DEA should have included consulting with the DEA SCOP and other officials responsible for the review, drafting, and implementation of PIAs. "To merit summary judgment on the adequacy of a search, an agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Marino v. DEA*, 15 F. Supp. 3d 141, 152 (D.D.C. 2014).

### B. The DEA Failed to Conduct Reasonable Search for Determination Letters

The DEA failed to conduct a reasonable search calculated to uncover all relevant determination letters the agency agreed to produce in lieu of the IPAs and PTAs requested by EPIC. EPIC agreed to accept the production of determination letters prepared by the OPCL instead of IPAs and PTAs after the DEA indicated that there are no final DEA IPAs or PTAs. Despite this agreement, the DEA failed to adjust its search in a manner "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

The DEA never performed a search for the determination letters. The determination letters EPIC received were found as a result of the DEA's search for responsive PTA and IPA documents. *See* Myrick Decl. ¶¶ 23-25. Once EPIC agreed to accept the determination letters, the DEA should have adjusted its search to specifically look for determination letters. "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby,* 920 F.2d at 68. The DEA never conducted a search for determination letters responsive to EPIC's request, thus it is impossible for the agency to have

12

used search methods reasonably expected to produce the information requested. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion for Summary Judgment in part and grant EPIC's Motion for Summary Judgment in part.

Dated: January 22, 2016

Respectfully Submitted,

MARC ROTENBERG, D.C. BAR # 422825
EPIC President

ALAN BUTLER, D.C. BAR # 1012128
EPIC Senior Counsel

  /s/ Jeramie D. Scott
JERAMIE D. SCOTT, D.C. BAR # 1025909
Electronic Privacy Information Center
1718 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 483-1140
jscott@epic.org

*Counsel for Plaintiff*