## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DRUG ENFORCEMENT ADMINISTRATION**, <br><br> Defendant. | Case No. 15-cv-00667 (CRC) |

## MEMORANDUM OPINION

Plaintiff Electronic Privacy Information Center ("EPIC") submitted a FOIA request to the Drug Enforcement Administration seeking internal assessments of how the agency's information collection systems affect citizens' privacy. When the DEA failed to produce responsive records by the statutory deadline, EPIC filed suit. The DEA subsequently released a single privacy assessment concerning a technology system that it no longer used, along with written guidance from the Department of Justice on whether specific DEA systems would require further privacy analysis. Both sides then moved for summary judgment, with EPIC objecting to the adequacy of both the DEA's original and supplemental search for responsive records. After ordering the DEA to submit a supplemental declaration justifying its later searches, the Court found in its favor on all issues. EPIC now moves for attorneys' fees and costs in the amount of $33,468.08. Finding that EPIC is entitled to compensation for some, but not all, of its fees, the Court will grant in part and deny in part EPIC's motion and award it a portion of its requested amount.

I.     **Background**[1]

The E-Government Act of 2002 requires federal agencies to perform a Privacy Impact

Assessment ("PIA") when "initiating a new collection of information" or "developing or

procuring information technology that collects, maintains, or disseminates information that is an

identifiable form." Pub. L. 107-347, § 208, 116 Stat. 2899, 2921 (2002). The Department of

Justice's Office of Privacy and Civil Liberties ("OPCL") assists agencies in determining when a

PIA is necessary by examining Initial Privacy Assessments ("IPAs") for particular information

systems under consideration by the agency.

In February 2015, EPIC submitted a two-part FOIA request to the DEA seeking IPAs and

non-public PIAs for information technology systems used by the DEA that involve the collection

of identifiable personal information. Pl.'s Compl. ¶ 39. The DEA promptly confirmed that it

had received EPIC's request and would process it in the order it was acknowledged. Id. at ¶ 42.

Three months having passed with no additional response, EPIC filed suit in early May 2015

requesting that the Court order the DEA to search for and produce all responsive, non-exempt

records. The DEA filed an answer, and the Court ordered the parties to "file a joint proposed

schedule for briefing or disclosure[.]" June 29, 2015 Minute Order. After the parties negotiated

the scope of the request and submitted a joint status report, the Court ordered the DEA to

"produce to Plaintiff any non-exempt records responsive to Plaintiff's FOIA request, by U.S.

mail, on or before August 27, 2015." July 20, 2015 Minute Order. Within a week, the DEA

released a PIA for an information technology system that the DEA indicated was not publicly

---

[1] For the sake of brevity, the Court incorporates by reference the factual background from
its earlier summary judgment ruling and will only recount the facts relevant to EPIC's fee
request here. See Sep. 13, 2016 Mem. Op., ECF No. 24.

posted because it was no longer used.  See Def.'s Opp'n Pl.'s Mot. for Attorneys' Fees and Costs ("Def.'s Opp'n"), Fourth Decl. of Katherine L. Myrick ("Fourth Myrick Decl.") ¶ 15.  The DEA also released 13 determination letters from the OPCL, which EPIC had agreed to accept in lieu of Initial Privacy Assessments.  See Fourth Myrick Decl. ¶¶ 12–14.  DOJ used these determination letters to advise the DEA whether more comprehensive privacy assessments were necessary for a particular technology system.  After reviewing these letters, EPIC found that four of them recommended PIAs, which were neither publicly available nor disclosed by the DEA after its initial search, so EPIC requested that the DEA search again for them.  See First Myrick Decl. ¶ 32.  The DEA re-ran its original search—using the same search terms and searching the same databases as before—with no new results.  Id. at ¶ 33.

The parties then cross-moved for summary judgment, the DEA arguing that it had conducted a reasonable search and EPIC challenging the adequacy of the agency's search by offering evidence of the purportedly missing PIAs.  After reviewing the parties' briefing and assessing the DEA's search methodologies, the Court granted and denied in part the DEA's motion for summary judgment and denied and reserved judgment in part on EPIC's cross-motion.  See Mem. Op. 11, ECF No. 24.  The Court held that the scope and methodology of the DEA's initial search was adequate, but, on the record before it, was unable to determine if the DEA had performed a reasonable, supplemental search for the four PIAs referenced in the OPCL determination letters.  Id. at 9–10.  Accordingly, the Court ordered the DEA "either to conduct a supplemental search consistent with this opinion or explain in a supplemental declaration why such a search would not be likely to uncover the remaining records in question."  Id. at 10.  The DEA offered a supplemental declaration explaining why an additional search would not uncover different results, and simultaneously conducted a supplemental search—using additional search

3

terms and locations—with no new results.  See Def.'s Mem. Supp. Renewed Mot. Summ. J. 6–7.

The DEA renewed its motion for summary judgment, to which EPIC raised no objections.  See

id.; Pl.'s Mot. Vacate Briefing Schedule 1.  The Court granted the DEA's motion.  See Nov. 10,

2016 Order, ECF No. 29.  The parties also attempted to negotiate attorneys' fees and costs, but

having failed to reach an agreement, EPIC moves to recover fees and costs in the amount of

$33,468.08, which includes time spent preparing the present motion.  Pl.'s Mem. Supp. Mot. for

Attorneys' Fees and Costs ("Pl.'s Mot. Attorneys' Fees") 2.

## II.    Legal Standard

Courts "*may* assess against the United States reasonable attorney fees and other litigation

costs reasonably incurred" in any FOIA case where "the complainant has *substantially*

*prevailed*."  5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).  A FOIA plaintiff must clear two

hurdles in order to recover its fees and costs:  it must show it is (1) eligible and (2) entitled to

such an award.  See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C.

Cir. 2011).  Under the eligibility prong, a court "asks whether a plaintiff has substantially

prevailed and thus may receive fees."  Id.  To substantially prevail, the complainant must show it

has obtained relief through either a judicial order or "a voluntary or unilateral change in position

by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii); see

also Brayton, 641 F.3d at 525 ("[T]he OPEN Government Act of 2007 . . . revived the possibility

of FOIA fee awards in the absence of a court decree.").

"If the requester is eligible for a fee award, a court 'proceeds to the entitlement prong and

considers a variety of factors to determine whether the plaintiff *should* receive fees.'"  Elec.

Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 999 F. Supp. 2d 61, 66–67 (D.D.C. 2013)

(quoting Brayton, 641 F.3d at 524).  A court must consider the following factors when

determining entitlement: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct."  Morley v. CIA, 719 F.3d 689, 690 (D.C. Cir. 2013). "In applying this test, '[n]o one factor is dispositive.'"  EPIC, 999 F. Supp. 2d at 67 (quoting Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008)).  "The sifting of those criteria over the facts of a case is a matter of district court discretion."  Tax Analysts v. DOJ, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

Finally, if a FOIA plaintiff is both eligible and entitled to a fees award, a court should assess the reasonability of the requested award.  While precedent can be a helpful guide to a court in conducting its assessment, the D.C. Circuit has recognized that this analysis is "necessarily somewhat imprecise," Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1323 (D.C. Cir. 1982), and asks that judges simply "exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible," Copeland v. Marshall, 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc).

## III.    Analysis

The Court's application of these standards will proceed in three parts: (1) EPIC's eligibility for a fee award, (2) EPIC's entitlement to a fee award, and (3) the reasonableness of its award estimate.

### A.    EPIC's Eligibility

This Court's June 20, 2015 Order and the DEA's subsequent release of records establishes EPIC as a prevailing party by granting the organization's requested relief.  The D.C. Circuit has at least thrice held that a judicial order requiring disclosure renders a plaintiff eligible for a fee award.  See Judicial Watch, Inc. v. F.B.I., 522 F.3d 364, 368 (D.C. Cir. 2008) (district

court order adopting a jointly proposed disclosure deadline rendered the plaintiff eligible for a fee award); Davy v. C.I.A., 456 F.3d 162, 166 (D.C. Cir. 2006) (same); Edmonds v. F.B.I., 417 F.3d 1319, 1322–23 (D.C. Cir. 2005) (same).  In Davy, the parties proposed a production schedule, which the Court memorialized in an order requiring the agency to "provide Plaintiff all responsive documents, if any" by specific, agreed-upon dates.  Id. at 164.  Even though the order adopted a jointly proposed schedule, it still created a "'judicially sanctioned change in the legal relationship of the parties' because 'timely production of nonexempt documents by the [agency] could no longer be described as a voluntary change in the defendant's conduct.'"  Id. at 166 (quoting Edmonds, 417 F.3d at 1322–23).  Likewise, upon receiving the parties' joint status report, this Court ordered the DEA to "produce to [EPIC] any non-exempt records . . . on or before August 27, 2015."  June 20, 2015 Minute Order.  This Court's order is virtually indistinguishable from those upheld by the Circuit and thus satisfies the eligibility prong.

Despite this clear precedent, the DEA argues that EPIC did not *substantially* prevail because the agency was already reviewing its records and would have released them regardless of the court order.  Def.'s Opp'n 12–13.  It relies on Hall & Assocs. v. U.S. Envtl. Prot. Agency, 210 F. Supp. 3d 13 (D.D.C. 2016), to support its position.  But unlike in Hall, where the FOIA requester refused to clarify his request when asked, the DEA has presented no evidence that EPIC was responsible for a delay in the DEA's review process.  To the contrary, the DEA appears to have engaged meaningfully with EPIC only *after* the complaint was filed.  And, even if the DEA was already planning to release its responsive records, the order still changed the legal relationship between the two parties because EPIC had "an enforceable judgment, and if the [DEA] failed to comply, it faced the sanction of contempt."  Davy, 456 F.3d at 166.

6

While the June 2015 order passes the eligibility hurdle, the September 13, 2016 order accompanying the Court's summary-judgment opinion does not.  To be clear, while the Court initially reserved judgment on a portion of EPIC's motion, it ultimately did not grant summary judgment in favor of EPIC on any of its claims.  The initial summary judgment order simply required the DEA to either "supplement the record by documenting its additional search . . . *or* by explaining further, in a declaration, why such a search would not be likely to uncover the remaining records at issue."  Sept. 13, 2016 Order, ECF No. 25.  Contrary to EPIC's assertions, the DEA had a choice between conducting an additional search and submitting a supplemental declaration.  After the DEA offered its supplemental declaration, the Court granted the DEA summary judgment in full.  The DEA did voluntarily run an additional search, but it uncovered no new documents.  The summary judgment order neither required the DEA to continue searching for records nor provided EPIC the relief it sought, i.e. the production of additional responsive records.  The order therefore did not make EPIC a substantially prevailing party.  See EPIC, 218 F. Supp. 3d at 40 ("The Court merely required DHS to supplement its Vaughn index by providing additional justification for its withholdings under Exemption 7D and no additional documents were produced.").  Accordingly, EPIC did not substantially prevail and is not eligible for fees as a result of the September 13, 2016 Order.[2]

B.  EPIC's Entitlement

Having found EPIC eligible for attorneys' fees, the Court must determine if it is entitled to a fee award.  Four factors are balanced within the district court's discretion: "(1) the public

---

[2] For similar reasons, the summary judgment order does not establish EPIC's eligibility under the "catalyst theory" because the order did not "substantially cause[] the requested records to be released."  Conservation Force v. Jewell, 160 F. Supp. 3d 194, 202 (D.D.C. 2016) (quoting ACLU v. U.S. Dep't of Homeland Sec., 810 F. Supp. 2d 267, 274 (D.D.C. 2011)).

benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." Morley v. C.I.A., 719 F.3d 689, 690 (D.C. Cir. 2013) (internal citation omitted); see Tax Analysts, 965 F.2d at 1094.

The Court will consider the first three factors together as they "assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." Davy, 550 F.3d at 1160.  With respect to the first factor, there was public value to EPIC's request:  EPIC sought the privacy assessments because it believed the public should be able to "assess the government's efforts to protect its privacy and serve as a check against the encroachment on privacy by the government."  Pl.'s Mot. Attys Fees 8.  Furthermore, it had a colorable basis for believing that the DEA was using technologies without publicly posting their statutorily required privacy assessments.  Id.  The DEA responds that EPIC's request was bereft of public value because the DEA was already required to post privacy assessments online and no new assessments were uncovered.  But this misunderstands the whole purpose of EPIC's request, which was to hold the DEA accountable if it had failed in its obligation.  Notwithstanding the actual results, as long as the request has "a modest probability of generating useful new information," courts have found the public benefit prong to be met.  Morley, 810 F.3d at 844.

The second and third factors are "often analyzed together to determine whether the plaintiff has a 'sufficient private incentive to seek disclosure of the documents without expecting to be compensated for it.'"  EPIC v. Dep't of Homeland Sec., 2016 WL 6879251, at *11 (D.D.C. Nov. 21, 2016) (quoting McKinley, 739 F.3d at 711).  Courts have repeatedly applied these two factors in EPIC's favor because it is a "not-for-profit public interest and research organization"

that derives no commercial benefit from its requests.  EPIC v. FBI, 72 F. Supp. 3d 338, 347

(D.D.C. 2014); see also EPIC, 2016 WL 6879251, at *12; EPIC, 999 F. Supp. 2d at 69.  The

Court has no reason to question the determinations of its colleagues that EPIC's non-profit status

and journalistic interest warrant an attorney fees award.  DEA's argument that EPIC's reliance

on donations transforms its interest from public to commercial also fails to persuade because its

chief function remains the public dissemination of information regarding government

surveillance.  See EPIC, 2016 WL 6879251, at *12 ("[A] link for donations does not transform a

nonprofits' interests from public interest to commercial or self-interest.").

The fourth factor, the reasonableness of the DEA's conduct prior to and throughout the

litigation, weighs in favor of the DEA or, at a minimum, is a wash.  While the DEA initially

failed to fulfill its FOIA obligations in a timely manner, it appears to have acted reasonably and

in good-faith ever since.  It promptly disclosed responsive material well before the court-ordered

deadline and remained receptive to EPIC's requests for additional searches.  Balancing the

somewhat-neutral fourth factor against the three others favoring EPIC, the Court finds that EPIC

is entitled to attorneys' fees under FOIA's fees-shifting provision.  See EPIC, 72 F. Supp. 3d at

349 (finding EPIC was entitled to attorneys' fees even though the fourth factor was neutral).

C.  Reasonability of Fees Estimate

As a substantially prevailing party, EPIC may be awarded "reasonable attorney fees and

other litigation costs."  5 U.S.C. § 552(a)(4)(E)(i).  The starting point for any reasonableness

assessment is the lodestar amount, i.e. the number of hours counsel worked multiplied by a

reasonable hourly rate.  See, e.g., EPIC, 72 F. Supp. 3d at 349.  As set forth by this Court in a

prior FOIA opinion, "[t]he burden lies with the fee applicant to produce satisfactory evidence

that the requested rates are in line with those prevailing in the community for similar services by

Case 1:15-cv-00667-CRC   Document 36   Filed 07/18/17   Page 10 of 17

lawyers of reasonably comparable skill, experience, and reputation." <u>Citizens for Responsibility</u>

<u>& Ethics in Washington v. United States Dep't of Justice</u> ("<u>CREW</u>"), 80 F. Supp. 3d 1, 2

(D.D.C. 2015) (internal citation and quotation marks omitted).  In this jurisdiction, public interest

attorneys without a customary billing rate, such as EPIC's lawyers here, typically calculate their

rates using a version of the billing rate matrix developed in <u>Laffey v. Northwest Airlines, Inc.</u>,

572 F. Supp. 354, 371 (D.D.C. 1983), to determine prevailing hourly rates for complex litigation.

Once a lodestar number has been calculated, the Court may exercise its discretion in deviating

from that amount based on a number of factors.  <u>See</u> <u>Weisberg v. U.S. Dep't of Justice</u>, 745 F.2d

1476, 1499–1500 (D.C. Cir. 1984).  Here, EPIC requests $20,391.42 in FOIA litigation fees,

$400 in litigation costs, and $12,938.50 in litigation fees for time spent briefing the instant fee

motion.  It has submitted extensive billing records and expert affidavits and reports in support of

its methodology and calculations.  The DEA (unsurprisingly) contests EPIC's requested award,

pointing to flaws in both EPIC's method of calculation and its staffing practices.

     *1. Laffey Matrix*

     There has been much debate in this district over how the billing rates in the original

<u>Laffey</u> matrix should be adjusted to account for inflation.  EPIC joins other members of the

public-interest litigation community in urging the Court to apply a version of the matrix that has

been adjusted for inflation based on an index of prices for legal services nationwide (the "LSI-

<u>Laffey</u> matrix").  The Government meanwhile asks the Court to adopt a version of the matrix

maintained by the Civil Division of the local U.S. Attorney's Office that adjusts for inflation

using an index of prices of consumer goods in the Washington, D.C. area (the "USAO matrix").

<u>See</u> <u>EPIC</u>, 218 F. Supp. 3d at 47–48 (citing conflicting case law on which matrix to apply in

FOIA cases); <u>CREW</u>, 80 F. Supp. 3d at 3.  Both parties submit the opinions of seasoned

economists to support their position as to which matrix most accurately captures the prevailing market rate for complex federal litigation in the District.

EPIC's expert, for example, recommends the LSI-Laffey matrix because (1) "it [is] focused on the market for legal services rather than the cost of living and therefore was likely to be the better predictor of prevailing (market) rates[,]" and (2) "complex federal litigation is a national market and not a local market." Pl.'s Mot. Attorneys' Fees, Ex. A ("2013 Decl. of Michael Kavanaugh") ¶¶ 12, 22.[3] The DEA's expert, by contrast, recommends a recently updated version of the USAO matrix. See Def.'s Opp'n, Ex. E ("2016 Decl. of Laura A. Malowane") ¶ 4. What is particularly pertinent here is that the U.S. Attorney's Office changed its methodology and introduced a new matrix for hourly rates in 2015, estimating the rates based on "2011 average hourly attorney rates in the Washington, D.C. area" that were then "adjusted for inflation using a Producer Price Index ("PPI") . . . [which] tracks pricing changes in output of Offices of Lawyers[.]" Id. at ¶¶ 9–10.[4] The PPI index covers a range of legal services offered by law firms collectively and different types of fee arrangements and clients. Id. at ¶ 10. The updated USAO matrix is preferable to the LSI-Laffey matrix, in Dr. Malowne's opinion, because it is based on 2011 rather than 1989 billing rates, breaks attorney experience levels into nine categories rather than five, and "uses an inflation index that better captures the pricing changes of the relevant market." Id. at ¶¶ 14–20. Furthermore, she asserts that Dr. Kavanaugh's

---

[3] This matrix is based on 1989 hourly billing rates for attorney services that are adjusted using the national Consumer Price Index for Legal Services. Decl. of Michael Kavanaugh ¶ 8.

[4] The 2011 average hourly attorney rates are derived from ALM Legal Intelligence surveys, which contain "actual average billing rates of attorneys in the Washington, DC area, from law offices of all sizes and types." 2016 Decl. of Laura A. Malowane ¶ 9 n.1.

justifications for using the LSI-<u>Laffey</u> matrix no longer apply because his declaration pre-dates the updated USAO matrix, and thus cannot speak to its merits.

EPIC fails to respond to the DEA's defense of the revised USAO matrix.  Instead, it offers a string of cases that have applied the LSI-<u>Laffey</u> matrix and relies heavily on the D.C. Circuit's analysis in <u>Salazar ex rel Salazar v. District of Columbia</u>, 809 F.3d 58 (D.C. Cir. 2015). <u>See</u> Pl.'s Reply 19.  These cases are inapposite, however, insofar as they do not discuss the updated USAO matrix's new methodology, and the billable hours they were assessing likely occurred prior to the period covered by it.  <u>See</u> <u>Salazar</u>, 809 F.3d at 62 (considering the old USAO matrix); <u>see also</u> <u>EPIC</u>, 218 F. Supp. 3d at 48 (same); <u>CREW</u>, 80 F. Supp. 3d at 3 (same). This Court has noted before that "[t]he new USAO matrix may well offer a preferable approach" to assessing attorneys' fees, but lacked the "evidentiary basis to reach that conclusion."  <u>Westfahl v. D.C.</u>, 183 F. Supp. 3d 91, 98 (D.D.C. 2016).  That is no longer the case.  After examining the case law and the supporting evidence offered by both parties, the Court is persuaded that the updated USAO matrix, which covers billing rates from 2015 to 2017, is the most suitable choice here.  Accordingly, it will order EPIC to re-calculate its fees based on the applicable rates in the updated USAO matrix.[5]

    *2. Estimate*

Having selected the applicable hourly rates, the Court will address the DEA's other two major objections to EPIC's fees request:  (1) that EPIC should only be reimbursed for its pre-

---

[5] The Court recognizes that the 2015 USAO matrix is intended to apply to work performed after June 1, 2015, <u>see</u> Def.'s Opp'n, Ex. F (USAO Matrix 2015-2017) at 1, and that EPIC's work started two months prior.  Nevertheless, it finds that applying the same 2015 rates to the attorneys' work in April and May would not result in a significant windfall to EPIC.

summary judgment work because it did not receive any responsive records after the DEA's

initial disclosures, and (2) that EPIC's recorded hours are excessive.

A starting principle when considering the reasonableness of a fee request is that "[t]here

is no precise rule or formula for making these determinations." Hensley v. Eckerhart, 461 U.S.

424, 436–37 (1983). A court "may attempt to identify specific hours that should be eliminated,

or it may simply reduce the award to account for the limited success." Id. Essentially, a court is

empowered to exercise its discretion in "making this equitable judgment," id., but should take

into account a plaintiff's overall success on the merits when making its determination. See

Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d 225, 239 (D.D.C. 2012) (citing

Judicial Watch v. U.S. Dep't of Commerce, 470 F.3d 363, 369 (D.C. Cir. 2006)). Accordingly,

"where the plaintiff achieved only limited success, the district court should award only that

amount of fees that is reasonable in relation to the results obtained, excluding nonproductive

time or . . . time expended on issues on which [the] plaintiff ultimately did not prevail[.]" Id.

Having found that the Court's initial order—but not its September 13, 2016 summary

judgment order—entitles EPIC to attorneys' fees, the Court will exclude any hours worked after

October 22, 2015 from its award because EPIC "did not ultimately prevail" on any of the issues

raised in its summary judgment briefing, and therefore should not be reimbursed for its later

efforts.[6] Judicial Watch, 878 F. Supp. 2d at 239 (awarding the FOIA plaintiff attorney fees for

---

[6] In the DEA's view, July 23, 2015 or August 27, 2015 are better cut-off dates because
they mark when the Avue PIA and OPCL determination letters were released to EPIC. The
Court declines the DEA's proposal, however, because the discussion between the parties that
occurred between disclosure and summary judgment substantially related to the initial
disclosures and the DEA's ongoing search for responsive records. See EPIC's Mot. Attorneys'
Fees, Ex. G at 4 (entry for 9/30/2015 refers to a discussion regarding the DEA's supplemental
search for records after a request from EPIC).

time spent initiating its lawsuit but not for preparing its unsuccessful summary judgment

motion); see also EPIC, 218 F. Supp. 3d at 51 (denying fees associated with unsuccessful

summary judgment briefing because "[e]verything EPIC won in this lawsuit—production of

responsive documents—it won well before the issue of summary judgment came before the

Court and EPIC received no further relief on the merits from the Summary Judgment Order.").

EPIC's pre-summary judgment billing entries currently total $6,691.40, see Pl.'s Mot. Atty Fees,

Ex. G. at 1, but need to be re-calculated to reflect the appropriate market rates as discussed

above.  See supra Sec. III.C.1.

The DEA also takes issue with the amount of time spent on various tasks, nitpicking

various line entries in EPIC's billing records.  See Def.'s Opp'n 29 (arguing that 5.1 hours spent

preparing a complaint for filing and 12 minutes discussing an extension request were

unreasonably long).  But as a fellow judge of this Court has observed, "[t]o the extent that the

Government objects to individual line items for work incurred by EPIC prior to summary

judgment, the Court declines to analyze every itemized instance of work conducted by EPIC's

attorneys. The Court's role in awarding fees is to do rough justice not engage in a picayune battle

of the ledgers." EPIC, 197 F. Supp. 3d at 294–96.  Without evidence of bad faith or egregious

practices, the Court declines to entertain squabbles over the minutes logged for a particular task,

and will, therefore, accept EPIC's time entries as well-founded and reasonable.[7]

Relatedly, the DEA contends that it was excessive for three EPIC attorneys, including a

senior-level attorney with over 20 years of experience, to work on a particular task or participate

in a case discussion.  See Def.'s Opp'n 29.  The DEA points to multiple occasions from the start

---

[7] Many of the DEA's line-item objections pertain to entries occurring after October 22, 2015, see Def.'s Opp'n 31–32, and thus are already excluded from the attorney fees award.

of litigation to October 22, 2015, seven by the Court's count, where three EPIC attorneys

discussed status updates or an upcoming joint status report.  In its reply, EPIC fails to justify why

three attorneys were necessary for any particular meeting or decision.  Indeed, EPIC seems to

concede that three attorneys might be excessive, stating that "[c]alls with just two EPIC attorneys

on the line warrant no additional markdown."  Pl.'s Reply 16.  Seeing no reasonable explanation

for why three attorneys would need to discuss a joint status report, the Court finds that in these

particular instances at least "the presence of three or more attorneys is unnecessary."  EPIC, 218

F. Supp. 3d at 52.  The Court will, therefore, "reduce EPIC's [relevant] billing entries to the

extent of allowing EPIC to claim fees for at most one senior attorney and one junior attorney for

participating in conference calls," id., and will order EPIC to adjust its billing records and re-

calculate its requested award in accordance with this opinion.

### 3. Fees on Fees

The Court's assessment of fees is not complete though because EPIC also seeks an award

of fees on fees—compensation for time spent preparing the present motion—in the amount of

$12,938.50, more than what EPIC expended on any other phase of litigation.  Compare Pl.'s

Mot. Attorneys' Fees, Ex. G ($5,236.70 for time spent on the attorneys' fees motion) & Pl.'s

Reply 21 (an additional $7,701.80 for time spent on the reply in support of the attorneys' fees

motion) with Pl.'s Mot. Attorneys' Fees, Ex. G ($6,691.40 for pre-summary judgment work,

$10,384.75 for summary judgment work, and $4,388.50 for post-summary judgment work).  In

assessing fees on fees, "the Supreme Court has explained that because . . . the district court must

consider the relationship between the amount of fees awarded and the results obtained, fees for

fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such

litigation.  For example, if the Government's challenge to a requested rate for paralegal time

resulted in the court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate." Judicial Watch, 878 F. Supp. 2d at 240–41 (quoting Com'r, INS v. Jean, 496 U.S. 154, 163 n.10 (1990)) (internal quotation marks omitted).

Following the methodology employed by many of its colleagues in this district, the Court will reduce the amount of fees on fees proportionally to the percentage of fees actually awarded as compared to EPIC's request.  See Judicial Watch, 878 F. Supp. 2d at 241 (reducing fees on fees awarded commensurately with the reduction of the award for litigation fees and costs). EPIC requested $20,391.41 in litigation fees.[8]  $6,691.40, or a roughly a third of that amount, is for EPIC's pre-summary judgment work.[9]  The fees on fees award should therefore be reduced by 67% once the figures have been adjusted using the proper USAO matrix's hourly rates.

---

[8] The Court calculated the $20,391.42 amount by summing the pre-summary judgment work, $6,691.40; the amount requested for the summary judgment work, $10,384.75; and the post-summary judgment work, $4,388.50, and reducing that total by the 5% discount factor proposed by EPIC.  See Pl.'s Mot. Attorneys' Fees, Ex. G.

[9] The absolute amounts referenced here will be reduced once the proper hourly rates are applied, but the proportion between the two will not change and can be used for the Court's calculations.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant and deny in part EPIC's motion, and will order the parties to calculate and submit in a proposed order the precise amount of the award based on the updated USAO matrix's billing rates and in a manner consistent with this ruling. An Order accompanies this Memorandum Opinion.


 

 

                                        _____
                                        CHRISTOPHER R. COOPER
                                        United States District Judge


Date: <u>July 18, 2017</u>